Filed 2/2/16  In re Angel R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ANGEL R., Jr. a Person Coming Under the Juvenile Court Law. | B264250 |
| | (Los Angeles County Super. Ct. No. DK08948) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANGEL R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

Angel R., Sr. (father) appeals jurisdictional findings and dispositional orders concerning his toddler son, Angel R., Jr. (Angel). He contends there is insufficient evidence to support the court's findings that his substance abuse and domestic violence toward mother endangered Angel. He further contends that the court erred by ordering him to attend classes for perpetrators of domestic violence and issuing a three-year restraining order. We do not agree with these contentions, and affirm the order of the juvenile court.

## FACTUAL AND PROCEDURAL SUMMARY

In December 2014, the Los Angeles County Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300 petition[1] on behalf of Angel (born January 2014) after he fell out of his car seat and sustained bruising and an abrasion to his head. DCFS alleged that father and Angel's mother, Irma C. (mother), failed to protect Angel and placed him in a detrimental and endangering situation by improperly restraining him (b-1).[2] (§ 300, subd. (b).) DCFS further alleged that father struck mother on the legs during an altercation in March 2014, thereby endangering Angel's physical health and safety and placing him at risk of physical harm (a-1 and b-2). (§ 300, subds. (a) & (b).)

In her initial interview with DCFS, mother, Angel's custodial parent, told DCFS that "there were a couple of incidents at which the father appeared to be under the influence" of marijuana when he came to visit Angel. Mother stated that she did not release Angel to father on those occasions. Mother also told the investigator father had physically abused her in the past, when the two had lived together. Mother was able to recall specific details about only one incident, a time in March 2014 when father struck her upper right leg. Mother told the investigator that correctional officers observed the resulting bruises on her leg while booking her in connection with an arrest for shoplifting.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The court ultimately struck the allegation pertaining to the car seat incident. Accordingly we do not discuss it further. We likewise do not address the allegations and findings concerning mother, who has not filed an appeal.

During a December 1, 2014 telephone interview and December 3, 2014 in-home interview with DCFS, father stated he last smoked marijuana more than three years ago. Father, who lived apart from mother and Angel in Hesperia, said he would "make his best efforts" to participate in an on-demand drug test in Pomona on December 3. Father did not appear for the test and later told a DCFS social worker that he did not have money for gas. The social worker rescheduled father's test for December 9, 2014, the same day as the family's team decision meeting. Father was unable to test that day, however, because he did not have his state identification card with him, and could not obtain an official letter from DCFS in time to make it to the testing center before the team decision meeting. The social worker called father the next day and asked him to test in Pomona. Father told the social worker he did not have money for gas to drive to the test site. He later called the social worker back and said that he would have money on December 19. It does not appear that father was asked to test any time on or around December 19.

During the family's team decision meeting, father reported that mother had been hospitalized in 2013 after she cut herself with a razor. The social worker observed scars consistent with this report on mother's left arm. Mother characterized the incident as "isolated", though she later disclosed that she had been hospitalized twice in connection with suicide attempts. Mother claimed all three incidents were precipitated by father's refusal to allow her contact with her relatives. Mother also claimed she was not diagnosed with any mental health problems or prescribed any psychotropic medications, and stated she did not believe she needed therapy. Mother and father agreed to accept voluntary family maintenance services.

DCFS detained Angel on December 26, 2014 and placed him in mother's home. At the detention hearing on December 31, 2014, the court ordered family maintenance services and parenting counseling for mother and father. The court ordered father to provide three consecutive clean drug tests. Father failed to appear for two tests in January and provided a "diluted" sample on February 3, 2015.

3

DCFS filed an amended section 300 petition on February 19, 2015. DCFS realleged the allegations from the initial petition (a-1, b-1, and b-2) and added allegations that Angel was at substantial risk of serious, nonaccidental physical harm (§ 300, subd. (a)) because mother threatened to cut herself with a knife during a violent altercation with father on May 20, 2014 (a-3), and because father and mother continued to have physical, telephone, and online contact, including approximately 20 phone calls from father to mother on February 9, 2015 and a text from him directing her to "answer my call you stupid bitch" when she did not respond (a-2). DCFS also added an allegation that father "has an unresolved history of marijuana use" that placed Angel at risk of physical harm (b-3) within the meaning of section 300, subdivision (b). DCFS further alleged in connection with count b-3 that father did not appear for two random tests on February 12 and 13; had a "diluted" drug test on February 3, 2015, which mother claimed he attributed to an "elixir" that allowed him to test clean; and may have been under the influence while caring for Angel in the past.

In an addendum report accompanying the amended petition, DCFS reported that it had arranged visitation for father and that, aside from meeting to exchange custody, the parents "agreed to abstain from any contact with each other and only discuss issues pertaining to Angel's health and well being, including medical appointments, services and overall development and health." In the "Assessment/Evaluation" section of the report, DCFS stated that mother and father continued "to engage in a relationship (friendship, courtship or other) and in domestic violence, despite both parents explicitly denying ongoing contact, domestic violence and stating that they do not want contact with one another." DCFS further stated that mother and father "have a severe and unresolved history of domestic violence," with at least one serious incident – the May 2014 altercation involving the knife – occurring in Angel's presence. DCFS also asserted that father had been dishonest about his lack of transportation and funds to drug test, as mother reported that he visited her and Angel on weekdays, "despite his claims of lack of monies and resources and despite the already arranged visitation plan" that provided for

4

visits every other weekend. According to DCFS, father "has the resources, he chooses to mismanage them."

DCFS also filed a jurisdiction/disposition report on February 19, 2015. In that report, DCFS documented a January 29, 2015 interview with mother and February 3, 2015 interviews with father and paternal grandmother. Mother reported that father "is a very violent and possessive person" who first violently mistreated her in 2012 or 2013 and "continues to demand sex from her and becomes extremely upset and at times violent whenever she says no." Mother stated that father insults her and yells at her, and threatens to hit her and throw objects. In March 2014, he "hit her on her legs repeatedly" before both parents were arrested at a Hesperia Wal-Mart; police officers noticed during mother's booking that her legs were bruised. Mother reported that father intentionally hit her in the upper thighs so that the bruising would not be visible under shorts or pants. She also reported that father "has a history of substance abuse" and "comes to the East Los Angeles area in order to smoke and drink with his friends" "during the weekend and on some weekdays." Mother did not know specifically where father went on these occasions, but reported that he "tends to sleep in his car." Mother admitted to being frustrated with father, "as he does not and has not assisted her in the care of child Angel, whether financially or through obtaining hygienic supplies for Angel."

During his interview, father told DCFS that mother "is a very possessive and jealous person, who tends to send him several messages and text[s] a day." Father stated that mother "tends to stalk him and gets upset if he talks to or associates with other females." He further stated that mother threw objects, insulted him, threatened him, and threatened to cut herself with scissors during an argument the parents had in March 2014, when they lived together in Hesperia. Father explained that he and mother were unable to make their relationship work due to mother's "overbearing behaviors, threats to hurt herself, anger and violence," but also stated that he and mother nonetheless "constantly break up and get back together." Despite admitting that he and mother still had "some type of physical relationship," father "was adamant that he is not and has not contacted [mother] in any manner (such as Facebook, text or calls) and any confirmed contact is

5

only to arrange a visit with Angel." Father "acknowledged that he has not provided [mother] with financial, moral or other assistance for Angel due to not working or having money, but believes that despite her justified anger, Angel should not be denied his father due to her vindictiveness towards him." Father denied using marijuana and stated that he visits East Los Angeles to see his brother, not to smoke and drink with friends.

Paternal grandmother acknowledged during her interview that father "has not provided Angel with sufficient clothes, food, money or attention and that [mother] has been the primary caregiver for Angel." Paternal grandmother "blamed herself for not putting more responsibility on [father] or urging him to go to work or go to school." Paternal grandmother further stated that father is a "good person" who "is not aggressive and has never hit or mistreated" mother. She corroborated father's account of the March 2014 scissors incident, which occurred in her home, and added that mother hit herself and threatened to tell the police father hit her. In a later interview, paternal grandmother informed DCFS that mother "had at least four incidents where she had cut herself after engaging in a fight with [father] during the time [mother] lived with [father] in Hesperia." There is no indication that DCFS ever asked paternal grandmother about father's alleged substance abuse or alleged visits with his brother.

DCFS concluded its jurisdiction/disposition report by urging the court to sustain the allegations in the amended petition. In DCFS's assessment, mother and father "have a long, severe and unaddressed history of domestic violence" which affects their "ability to safely parent and care for Angel." DCFS also observed that both parents "deny being the aggressor" and concluded that "[b]oth parents continue to find ways to control each other via threats and control over Angel, despite DCFS supervision." As to father specifically, DCFS noted that "he admitted to not being a present father for Angel and not providing [mother] with any type of assistance, whether moral, financial or other. Despite [father's] claims that he wants to see his son and wants to comply with the Department, but [*sic*] has made constant excuses ranging from lack of finances and transportation and having an unreliable phone. Yet [father] has stated that he occasionally comes to East Los Angeles to visit his brother. Despite his recent

6

cooperation, [father] minimized his criminal history and has not been forthcoming about his possible substance use as evident in his missed tests in January 2015 and recent diluted test . . . [Father] continues to attempted to [*sic*] confront/contact [mother], despite [father] stating that he wants nothing to do with [mother], other than have contact with Angel." DCFS recommended that father be ordered to attend weekly parenting classes and counseling sessions, participate in domestic violence and anger management programs, and submit to random weekly drug testing.

At the February 19, 2015 hearing, the court made detention findings as to father and released Angel to mother. The court ordered DCFS to provide father with transportation funds to enable him to test at the drug test facility closest to his residence and to help father with referrals and visits. The court also issued a temporary restraining order barring father from contacting mother and Angel outside of his monitored visits. The temporary restraining order, set to expire March 10, 2015, barred "[c]ontact, either directly or indirectly in **any** way, including but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means." (Emphasis in original.)

DCFS filed an interim review report on March 10, 2015, the date of the scheduled jurisdiction and disposition hearing. DCFS reported that it had obtained auxiliary funds for father but was unable to contact him by phone or mail to arrange visits or facilitate services. DCFS further reported that father had not drug tested since his February 3 diluted test. Additionally, he contacted mother via text message on February 20, 2015.

At the March 10 hearing, father requested a paternity test. The court continued the hearing to April 21, 2015 to accommodate father's request and extended the temporary restraining order to that date as well. The court orally advised father that the restraining order was extended and included "no social media contact, no e-mail, no texting, no phone contact."

DCFS submitted an addendum report to the court on April 21, 2015. The report indicated that DCFS had interviewed mother and father separately on April 6, 2015. Father showed a social worker 52 Facebook messages mother had sent him on January 8,

7

2015, and additional messages and phone calls she sent him between that date and February 9, 2015. Father "was adamant that he has not called, texted, or used social media to contact mother" since the temporary restraining order was renewed on March 10, 2015. Father also "was adamant that he last used marijuana when he was released from Juvenile Hall at around the age of 18." He denied using any methods to dilute his urine for the February 3 test; he claimed "he drinks a lot of water." Father confirmed that he had received auxiliary funds from DCFS "but has not used it for any case related issues, with the exception of his test on 04/03/2015." That test was positive for cannabinoids.

During her interview, mother informed the social worker that father had been calling her. She showed the social worker her cell phone call log, which showed 28 calls from father's number between March 25, 2015 and April 5, 2015. Mother reported she last spoke to father on April 3, 2015. According to mother, father "informed her that he had tested for the Department and is going to make changes to his lifestyle. [Mother] stated that [father] promised to get a job and is planning on obtaining a home in Texas for him, [mother] and child Angel." Mother also stated that she does not know if father uses any drugs and claimed, contrary to her previous statements, that father never spoke to her about using marijuana or drug testing.

DCFS concluded that "there are more serious concerns than originally thought. Despite strict orders from the Court, admonishment of both parents by Commissioner Marpet and an ongoing restraining order, [father] and [mother] continue to break the restraining order and have ongoing contact." DCFS opined that both parents continued to engage in "immature and irrational behaviors" and failed to comply with court orders, thereby demonstrating "their disdain for rules, expectations and child safety" and placing Angel at risk of ongoing harm. As to father, DCFS concluded from his "obsessive calling behaviors" and "fantasy of living in Texas" that he was "fixated" on mother and "unable to abstain from contact with her." DCFS recommended that the court detain Angel from both parents and issue a general suitable placement order for him and family reunification services for the parents.

At the April 21, 2015 jurisdiction and disposition hearing, the court admitted into evidence all of the reports discussed above. DCFS submitted on the paper record, and neither parent testified or presented any witnesses. Father asked the court to dismiss the allegations pertaining to the March 2014 leg-bruising incident because "there was never any evidence to follow up that claim" and he "was not booked for domestic violence." He acknowledged that he contacted mother in violation of the restraining order but claimed "that is the extent of contact" and that it was "largely to find out what's going on with the son." Father also denied "engaging in a relationship or a trying [*sic*] to mend a relationship" with mother. Regarding the substance abuse allegation, father argued that his single positive drug test reflected "low levels" and occurred when Angel was not in his care. He further contended "there's nothing to show that father's use of marijuana, at this point, has interfered with his ability to parent and/or hold a stable job or has resulted in any other interactions with law enforcement."

The court dismissed the section 300, subdivision (b) allegation pertaining to the car seat incident (b-1). It amended the allegations pertaining to the March 2014 leg-bruising incident (a-1 and b-2) to reflect a date of May rather than March and sustained those allegations as amended. The court also amended the section 300, subdivision (a) allegation concerning mother and father's continued contact (a-2) to an allegation under section 300, subdivision (b) (b-4) and sustained that allegation as amended. The court sustained allegation a-3, regarding the knife incident, and allegation b-3, the substance abuse allegation, as pleaded. The court detained Angel from father after finding "by clear and convincing evidence there is a substantial danger to the minor's physical and mental well-being." Over DCFS objection, the court declined to detain Angel from mother and placed him in her home on the condition that she have no contact with father. The court also issued a three-year restraining order against father, which does not appear in the record. The court orally explained that the order restrained father from "every kind of contact" with mother, including "no social media contact, no phone contact, no tweeting, no form of e-mail." The court also ordered father "to do weekly random drug and alcohol testing, with no missed or dirty tests, parenting, and individual counseling to

9

address all of the issues of the case, including anger management and domestic violence counseling" for domestic violence perpetrators.

Father timely appealed.

## DISCUSSION

### I. Justiciability

We first consider whether father's appeal is properly before us. Angel will remain under the court's jurisdiction regardless of the outcome of his appeal because mother has not challenged the court's orders. "[A] jurisdictional finding good against one parent is good against both" because dependency jurisdiction attaches to the child, not the parents. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Thus, the general rule is that a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

We nonetheless retain discretion to consider the merits of a parent's appeal (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493), and often do so when the finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [Citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; see also *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1064-1065.) Here, the jurisdictional findings related to the domestic violence allegations serve as the basis for the dispositional orders father challenges here – the restraining order and the order that he attend domestic violence classes. We accordingly exercise our discretion in favor of considering father's claims on the merits.

## II.    Analysis

### A.    The substance abuse jurisdictional findings were supported by substantial evidence.

Father challenges the court's findings that his substance abuse placed Angel at risk of physical harm. He contends that DCFS failed to prove that he used, let alone abused, marijuana, and that any alleged use of marijuana had a negative effect on Angel or impaired father's ability to care for him. We are not persuaded.

DCFS had the burden of proving by a preponderance of the evidence that Angel was a dependent of the court under section 300. (*In re I.J.* (2013) 56 Cal.4th 766, 773; § 355, subd. (a); § 342.) We review the court's conclusion that DCFS met this burden for substantial evidence. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Under the substantial evidence standard, a finding "will be upheld if it is supported by substantial evidence," which is "reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) We do not resolve conflicts in the evidence, make credibility determinations, or reweigh the evidence. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; *In re Casey D.* (1999) 70 Cal.App.4th 38, 52.) Instead, we view the entire record in the light most favorable to the court's determination, draw all reasonable inferences in support of the findings, and affirm the order even if some evidence in the record may support a contrary finding. (*In re I.J.*, *supra,* 56 Cal.4th at p. 773.)

Father first disputes that he uses marijuana. There is substantial evidence to the contrary in the record. Father provided a positive drug test just weeks before the jurisdiction and disposition hearing, and we infer from his numerous missed tests. (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343.) Mother also told DCFS investigators that father showed up to visit Angel while exhibiting signs of marijuana use, and claimed that father frequently got high with friends in East Los Angeles. Father argues mother's statements should be disregarded because she had "very serious mental health issues" and "repeatedly changed her story about things." He also points to his own statements to DCFS, in which he denied using marijuana and diluting

11

his test sample.  These arguments amount to an invitation for us to reweigh the evidence before the juvenile court, which we may not do.

Father is correct, however, that the mere use of marijuana is not sufficient to sustain a finding of jurisdiction under section 300, subdivision (b).  "[W]ithout more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 764; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; see also *In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 453) Section 300, subdivision (b) by its terms makes clear that a finding of substance *abuse* is necessary; it states that jurisdiction may lie where there is "a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." "[A] finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional, or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766.)  In other words, there must be some "evidence of life-impacting effects of drug use." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726.)  Thus, the father in *In re Drake M.*, who had a steady job, provided for Drake's basic needs, remained sober in Drake's presence, and had no significant legal, social, or personal problems caused by his drug use, was improperly found to be a substance abuser.  (See *In re Drake M.*, *supra*, 211 Cal.App.4th at pp. 767-768.)

The same cannot be said here.  Unlike the father in *In re Drake M.*, who used medical marijuana to treat arthritis he developed during his many years of working as a concrete mason and continued to fulfill his duties at work (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 760), father used marijuana without a prescription and did so at the expense of maintaining gainful employment or continuing his education. Father also failed to provide Angel with "clothes, food, money or attention" and occasionally showed up for visits while under the influence.  (Contra *In re Drake M.*, *supra*, 211 Cal.App.4th

12

at p. 767.)  Additionally, he failed to appear for numerous drug tests despite having been provided with financial assistance to do so, and provided diluted and positive samples when he did appear, while maintaining that he had not used marijuana in several years. This further distinguishes him from the father in *In re Drake M.*, who "stated he was willing to do whatever was necessary to prevent Drake's removal from his custody" (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 759), and renders him more like the father in *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186 who provided a single diluted urine sample and failed to appear for the rest of his tests, leading the court to conclude that "a reasonable inference could be drawn that father's marijuana use was more frequent than the one admitted instance . . . ."

The juvenile court reasonably could conclude based on all of this evidence that father abused marijuana.  (See *In re Natalie A.*, *supra*, 243 Cal.App.4th at p. 186.) Because of Angel's very young age, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm."  (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767.) We accordingly affirm the juvenile court's jurisdictional findings relating to substance abuse.

**B.     The domestic violence jurisdictional findings were supported by substantial evidence.**

Father next contends that "the record did not support a finding of serious physical harm pursuant to section 300, subdivision (a) based on anything the father did in relation to the mother" or Angel.  He further contends that "the evidence did not justify true findings pursuant to section 300, subdivision (b)," because DCFS "failed to introduce or corroborate evidence showing Father caused or would cause his son any physical harm based on his interaction with the mother."  We do not find these contentions persuasive.

A child is within the jurisdiction of the juvenile court under subdivisions (a) and (b) if he or she "has suffered, or there is a substantial risk that [he or she] will suffer, serious physical harm," harm that is either "inflicted nonaccidentally upon the child by the child's parent or guardian" (§ 300, subd. (a)) or results from "the failure or inability of

13

his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b).) Numerous courts have found that domestic violence regularly inflicted on one parent by another exposes children to the risk of serious physical harm for purposes of one or both subdivisions. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-600; *In re E.B.* (2010) 184 Cal.App.4th 568, 576; *In re S.O.* (2002) 103 Cal.App.4th 453, 460-462; *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194; see *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5 ["Both common sense and expert opinion indicate spousal abuse is detrimental to children"].) "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

Here, there is ample evidence that mother and father continually engaged in repeated incidents of domestic violence throughout Angel's short life. In May 2014, father hit mother in the legs, intentionally placing the bruising where it would not be readily visible. In a separate May 2014 incident, mother and father fought and mother brandished a knife while Angel was present. Paternal grandmother reported at least four other similar incidents occurred while the parents were living together, and mother reported that the incidents continued at least through February 2015, with father becoming upset and violent when she refused his demands for sex and threatening to hit her and throw objects at her. Father urges us to discount mother's claims of abuse as "unsupported" and uncorroborated, and contends that "if anything, the mother was the aggressor." It is not our role to make credibility judgments on appeal, however, and the testimony of a single witness is sufficient to uphold a judgment. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 200.)

Father also argues this case is distinguishable from *In re Giovanni F.*, *supra*, 184 Cal.App.4th 594, which sustained allegations under section 300, subdivision (a) primarily on the basis of the child's exposure to domestic violence. In that case, father Joel drove the family car with one hand while using his other hand to hit and choke his son's mother, R.F., to the point of unconsciousness. (*In re Giovanni*, *supra*, 184 Cal.App.4th at pp. 600-601.) His infant son Giovanni was in the car. When the car stopped, Joel

14

physically struggled with R.F. over Giovanni's car seat while Giovanni was in it, causing the car seat to crash into and crack a window. (*Id.* at p. 600.) On a separate occasion, Joel physically attacked his own mother, twisting her hand and shoving her while she was holding Giovanni. (*Id.* at p. 599.) The court held that these incidents of domestic violence, coupled with Joel's long history of violent attacks, denials of violence, and violation of a restraining order, plainly endangered Giovanni and placed him at perilous risk of nonaccidental harm. (*Id.* at pp. 600-601.) We agree with father that the incidents of violence in this case are not as severe as those perpetrated by Joel. Yet, as in *In re Giovanni F.*, father downplays and denies his role in his altercations with mother and continues to have contact with mother in violation of a restraining order. The incidents were not isolated but rather occurred with regularity throughout the couple's tumultuous on-again, off-again relationship.

Father also contends that "there was no evidence the minor was affected by the parents' interaction much less at risk of physical harm." However, a jurisdictional finding based on domestic violence between parents does not require that the child be present or that the violence be directly perceived by him or her. As explained in *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194, even children who were not present when incidents occur are "[o]bviously . . . put in a position of physical danger" from regularly occurring domestic violence in their home because they could "wander into the room where it was occurring and be accidentally hit" or injured. Due to Angel's tender age, he is likely to be close to his parents when they engage in domestic battles, and the court could reasonably find he would be at physical risk from acts of violence for the reasons set forth in *In re Heather A.* Even if mother were the aggressor, as father claims, father continued to engage in "some type of physical relationship" with her, continued to contact her, and generally exhibited minimal regard for Angel's needs and wellbeing, placing both mother and Angel at a substantial and ongoing risk of physical harm.

15

**C.     The court did not abuse its discretion by ordering father to take domestic violence classes.**

Father contends it was an abuse of discretion and a waste of government resources for the court to order him to participate in classes for domestic violence perpetrators, because "the evidence indicated the mother was at least equally a perpetrator of domestic violence if not the instigator" and he and mother agreed to limit their ongoing contact with each other. We do not agree.

In this portion of his appeal, father is challenging the court's ordering of family maintenance services. Section 362, which governs the provision of services where the child is declared a dependent but is retained in parental custody in the dispositional order (*In re A.L.* (2010) 188 Cal.App.4th 138, 143), by its terms vests the court with discretion to order whatever family maintenance services it deems "necessary and proper," including counseling and education programs. (§ 362, subd. (d).) This language affords the juvenile court broad discretion to determine what would best serve and protect the child's interests and to fashion its dispositional order accordingly. (See *In re A.E.* (2008) 168 Cal.App.4th 1, 4; *In re A.L.*, *supra*, 188 Cal.App.4th at p. 145; *In re Natalie A.*, *supra*, 243 Cal.App.4th at pp. 186-187.) In reviewing an order for abuse of this broad discretion, we view all the evidence and draw all reasonable inferences in favor of the court's ruling. (*In re Natalie A.*, *supra*, 243 Cal.App.4th at pp. 186-187.) We affirm the order unless no rational trier of fact could conclude that the juvenile court's order advanced the best interests of the child. (*Ibid.*)

We cannot draw that conclusion here. As discussed above, substantial evidence supported the court's findings that the parents engaged in domestic violence and placed Angel at risk of physical harm by doing so. Mother reported that father violently mistreated her since at least 2013, struck her in the legs in 2014, and continues to yell, threaten, and throw objects at her – despite their agreement to limit contact and a court order mandating them to refrain from contact. The court reasonably could have concluded from mother's reports and both parents' refusal to refrain from contacting one another that father – and, more importantly, Angel – could benefit from his parents taking

16

a domestic violence course. Indeed, section 362, subdivision (d) requires the juvenile court to order services "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." The juvenile court did not abuse its discretion by concluding that domestic violence classes for father could eliminate some of the conditions that placed Angel at risk of future harm.

### D. The restraining order was supported by substantial evidence.

Father's final argument is that the permanent restraining order–which is not in the record–"was not warranted under the factual circumstances of this case and should be reversed." He again contends that "the risk was posed by the mother and her erratic behavior and mental health issues," and that in any event he was no longer in a relationship with mother and "had no intent of contacting the mother other than to discuss their son." Therefore, he asserts, his "factual circumstances are significantly different than the two leading cases on juvenile court restraining orders" and did not support issuance of a restraining order. Although we agree that father's behavior was less egregious than that in *In re Cassandra B.* (2004) 125 Cal.App.4th 199 and *In re Brittany K.* (2005) 127 Cal.App.4th 1497, we conclude that issuance of a restraining order was supported by substantial evidence.

Juvenile courts are authorized to issue ex parte orders "enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace" of a child or the child's parent, legal guardian, or caretaker. (§ 213.5, subd. (a).) Where domestic violence is at issue, the court may issue a restraining order "in the manner provided by Section 6300 of the Family Code" (§ 213.5, subd. (a)), which authorizes restraining orders based on "reasonable proof of a past act or acts of abuse," "based solely on the affidavit or testimony of the person requesting the restraining order" (Fam. Code, § 6300). Such acts of abuse include physical abuse or injury, as well as acts that "destroy[] the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) "If there is substantial evidence

17

supporting the order, the court's issuance of the restraining order may not be disturbed." (*In re Cassandra B.*, *supra*, 125 Cal.App.4th at pp. 210-211.)

Although the restraining order itself is not in the record, the court's minute order indicates that "the 3 year restraining order means no physical contact, no phone contact, no social media contact, no texting, no e-mail, etc." Its comments during the hearing reflect the same restrictions. These restrictions are supported by substantial evidence in the record. Mother reported that father hit her, threatened her, and yelled at her. Despite a previous restraining order, father contacted mother at least 28 times by phone, continued to engage in a "some type of physical relationship" with her, and planned to move to Texas with her. These interactions, which according to mother turned violent if she refused father's demands, placed Angel at risk of harm and provided the court with a basis from which to reasonably conclude a restraining order was necessary.

We also do not agree with father's suggestion that *In re Cassandra B.* and *In re Brittany K.* set a floor for the type of behavior that warrants the issuance of a restraining order. Unwanted contact need not rise to the level of "relentless and unceasing" attempts to regain custody of one's child detailed in *In re Brittany K.*, *supra*, 127 Cal.App.4th at p. 1512, or the repeated threats to kidnap one's child in *In re Cassandra B.*, *supra*, 125 Cal.App.4th at p. 206. Acts of isolation, control, and threats can be sufficient to demonstrate destruction of a victim's "mental and emotional calm" warranting a restraining order (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 822, and no showing that future physical abuse is likely is required (*id.* at p. 823). Past violence and unwanted contact can be sufficient, and the record here contains substantial evidence of both.

## DISPOSITION

The order of the juvenile court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.